Donahue, J.,
dissenting. It is certainly clear from the reading of Sections 3 and 7 of Article XVIII that the constitutional convention, when it framed these amendments to the constitution, and that the people of this state, when they adopted them, intended to give, and did give, to municipalities full authority to exercise' all powers of local self-government, but it is also clear that municipalities are subject equally with the state to any and all other provisions of the constitution affecting the exercise of governmental powers.
The beneficence of municipal home rule is not a question involved in this controversy. The arguments in favor of or against it ■ were proper considerations for the constitutional convention *392 and for the electors of the - state, but now that constitution is the paramount law of this state. The sole and only duty of the court is to interpret it as it is written, and not as the court thinks it should have been written. Any attempt to force a construction of this constitution in line with the personal preference of the court would be a flagrant abuse of the court’s authority.
It is not here contended, nor does any one who is fully advised upon the subject contend, that the constitutional amendments do not impose some limitations upon municipalities in the exercise of local self-government. These limitations are written into the constitution and are just as important as any other part' of the constitution. Section 3 of Article XVIII, which grants to municipalities the right to govern themselves, also provides that local police, sanitary and other similar regulations shall not conflict with general laws. Section 13 of Article XVIII provides that “Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by law, and may provide for the "examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities.” These limitations may be wise or unwise. However that may be, it is idle to say that they do not apply to cities having adopted charters under favor of Section 7 of Article XVIII of the Constitution.
*393 The conferring of home rule upon municipalities was not the only purpose of the' constitutional convention. Many other matters of equal importance induced the call for a constitutional convention, and principal among these other matters was the desire on the part of the people of this state to abolish political conventions and to establish in their stead uniform methods for the nomination of elective state, district, county and municipal officers. Apparently the constitutional convention deemed this of equal importance to municipal home rule, and it appears that the electors of the state were more interested in the former, for that amendment received a very much larger majority of the popular vote than did the latter proposal providing for home rule. This purpose of the people and of the constitutional convention found expression in Section 7 of Article V, which- provides, among other things, that “All nominations for elective state, district, county and municipal offices shall be made at direct primary elections or by petition as provided by law.” The proper construction of this provision of the constitution is the vital question in this case and dispositive of it. The language of this amendment is so plain, positive and direct that. it needs no construction. By its express terms it applies not only to the state, to districts and to counties, but also to every municipality in the state, and it is not the province of a court to read into this amendment the words “except in cities that have adopted a charter providing for other methods of nomination,” no matter if the court is of the opinion that these words should have been written *394 therein. Any refusal on the part of the court to-enforce any provision of the constitution of a state, or to change or alter its plain and unambiguous terms, is a clear usurpation of authority. The constitution itself provides the means and method by which it may be amended and it is needless to say thé method so provided is not by judicial construction.
Whether the word “or” as it is used in this section of the constitution should be read “and” has absolutely nothing to do with determining whether this provision of the constitution applies to cities having adopted charters. The statutes of our state expressly provide that “and” may be read “or” and “or” read “and,” if the sense requires it, but a change in the reading would be no answer to the question propounded. If the authority to provide by law for nominations is vested in municipalities and not in the general assembly of the state, then even though “or” should be read “and,” and this provision of the charter is unconstitutional for that reason only, it could be amended forthwith by the same authority that created it. On the contrary, this opinion is based upon the proposition that the municipal corporation has no such authority. There is no distinction made in Section 7 of Article V between elective state, district and county offices and municipal offices. All are alike comprehended in the positive and unequivocal language of this constitutional provision, and the nomination of candidates for each of these offices must be made at a direct primary election, or by petition, as provided by law.
Not only is the language of Section 7 of Article V clear and unambiguous, but it also appears from *395 the debates in the constitutional convention just what that convention intended by this amendment. When an amendment was offered, inserting the words “or otherwise” between the word “petition” and the phrase “as provided by law,” it was very promptly rejected, for the reasons then stated by members of that convention that such an amendment would entirely destroy not only the effect but the purpose of this proposal, and would permit the doing of the very thing that the proposal was intended to prevent. No matter -what may be said as to the purpose or advantage of municipal home rule, with all of which I have no quarrel whatever, yet the fact remains that one part of the constitution of the state should receive no more favorable consideration- from a court than each and all its other parts. The constitution, while it is divided into articles and sections, is nevertheless a unit. It is the fundamental law of the state and expresses the will of the highest authority in the state, and to this authority all good men must yield whether in accord therewith or not. There is no conclusion that can be reached by any process of right reasoning other than that Section 7 of Article V of the Constitution applies to the state and every district and county and municipality in the -state, and that each and all must conform to the provisions thereof until the authority that has made this constitution shall otherwise direct.
Nor do I understand that counsel differ upon this proposition. Their difference' arises rather upon the proper construction of Section 7, Article V. It is contended upon the part of counsel for *396 the relator that the word “law,” as used in the phrase in that section “as provided by law,” does not mean an act of the general assembly of Ohio only, but that it also includes the provisions of any charter adopted by a municipality under favor of Section 7, Article XVIII of the Constitution. It is true, that the word “law” is very comprehensive in its meaning. It would be hard to frame a definition of the word that would not be too narrow in its limitations if it is to he taken in its broadest and most comprehensive sense. In this state, however, we ought not to meet with much difficulty in determining the sense in which this word is here used. The connection in which it is found materially assists in determining its meaning; it occurs a great number of times in these amendments to the constitution, and in every other connection in which it is used it is so perfectly plain that it means an act of the general assembly of Ohio as to be beyond controversy.
In the same line of Section 7, Article V, it is used in the sentence “provision shall be made by law for a preferential vote for United States senator.” It must be conceded that in this sentence it means an act of the general assembly of the state. It is unbelievable that this word was intended to mean one thing in one sentence of a section of the constitution of the state, and another thing in another sentence of the same section. To hold this to be true would be to hold, in effect, that the framers of these amendments juggled with words for the purpose of perpetrating a fraud upon the electorate of the state and that this purpose has been fully accomplished. Such a conclusion would *397 be ridiculous. The framers of the constitution and the electors who have adopted it undoubtedly intended not only that each word used therein should be given its usual and ordinary meaning, but also that the language used should have uniform meaning throughout the entire constitution. The example I have given of the use of this word in immediate connection with the phrase under discussion is not the only instance in these amendments that clearly indicates the meaning to be given to this word and the sense in which it was used by the framers of these proposals.
Section 1 of this same article, defining the qualifications of an elector, provides, among other things, that he shall have resided in the county, township or ward “such time as may be provided by law.” In Sections 1, 2, 10, 12, 13 and 14 of Article XVIII, which is the municipal home-rule amendment, the word “law” and the phrase “prescribed by law” are used many times, and yet in no single instance where they are so used is there any possible doubt as to the meaning intended thereby. In Section 1, providing for the classification of municipal corporations into cities and villages, the following language is used: “The method of transition from one class to the other shall be regulated by law.” In the last line of Section 2 is the following: “under regulations to be established by law.” In Section 10, which provides for appropriating or otherwise acquiring property for public use and for the issuing of bonds therefor, we find the further provision that such bonds shall not “be *398 included in any limitation of the bonded indebtedness of such municipality prescribed by law.” In Section 12 of the same article is found a provision for the issuing of bonds for certain purposes “beyond the general limit of bonded indebtedness prescribed by law.” In Section 13 it is provided that laws may be passed to limit the powers of municipalities to levy taxes and incur debts for local-purposes. Section 9 of Article I, as' proposed by the constitutional convention, but not adopted by the electors, contained the phrase “until,otherwise provided by law.” Section 16 of Article I, “and in such manner as may be provided by law.” Section 19a, “shall not be limited by law.” In Section If of Article II are found the phrases “authorized by law”' and “provided by law.” Section lg of the same article contains the phrase “unless otherwise provided by law.” Sections 33, 34, 35, 36, 38, 39, 40 and 41 of Article II contain similar expressions. In Section 2 of Article IV is found the phrase “otherwise provided by law.” In fact, nearly every proposal submitted by the constitutional convention of 1912 contains a similar use of the word “law” and the phrase “as provided by law,” and yet in no other single instance would it be claimed by any one that the word “law” was intended to mean or does mean anything other than an act of the general assembly of Ohio. It would, therefore, seem incredible that in this one section, and in this one sentence of this section, the word “law” should have any other or different meaning than it has in all other parts of the constitution. Not only this, but many of the statutes of our state contain the word “law” and *399 “as prescribed by law,” and yet in every instance the meaning is so clear it would be idle to contend for any other or different meaning than that the word or phrase when so used means statutory law.,.
It is undoubtedly true that the constitution of the state, the common law, municipal charters and municipal ordinances, come within the general • definition of the word “law,” but in all the history of this state the specific nomenclature of laws of different nature or origin has been so persistently adhered to, that there is no longer possibility of mistake in the meaning of the word. Whenever the reference is to constitutional law, ordinances .or charter,, the specific words are used, but whenever it is intended to refer to statutory law the word “statutory” is seldom or never used, but only the word “law,” unmodified by any descriptive term. Long before this amendment was written this court declared this to be the proper meaning of the word “law” when so used without other descriptive term. When the framers of the constitution made use of this word, it must be presumed that they intended it should have the meaning and intent that had theretofore been given it by judicial construction. This court held in the case of Johnson v. State, 66 Ohio St., 59, and State v. Collingsworth, 82 Ohio St., 154, that an act in violation of the common law'or an act in violation of a municipal ordinance is not an unlawful act within the meaning of the provisions of Section 12404, General Code, which provides that “Whoever unlawfully kills another, except in the manner described in the next four preceding sections, is guilty of' manslaughter.”
*400 It follows then that the word “law” as found in the phrase “as provided by law” in Section. 7 of Article V of the Constitution must be given its plain, ordinary and usual meaning and that that meaning must be uniform in all the parts of the constitution and the amendments thereto, and as it clearly appears that wherever th.is word is used in other parts of the constitution, or the amendments thereto, it means an act of the general assembly of this state, so in this section it must be given the same meaning.
This construction of this provision of the constitution is in no wise in derogation of the authority of municipalities to exercise all powers of local self-government. It must be conceded that the state has been given as full authority to control its own affairs as has been given to municipalities, and yet the state is equally subject to the provisions of this amendment. True,' the legislature is given the authority to provide the means and methods by which this provision of Section 7 of Article V shall be carried into effect, but the constitution itself provides the substance, binding alike upon the state and municipalities, and it is but the mere detail that is left to legislative authority. The legislature has no discretion to. change these provisions in any particular, nor can it hinder on delay their operation. If these provisions must obtain in state and city alike, it is not of very great importance which authority shall provide for the detail of carrying them into effect. Certainly there should be one uniform plan, available to the electors residing within municipalities as well as to the electors of the state residing outside munici *401 palities. Undoubtedly this was the reason that the people of the state, in the adoption of its constitution, committed to the legislature of the state the right to adopt and prescribe that uniform plan. Beyond that, the legislature has no power, and the provisions of the constitution are supreme.
The first general assembly of this state convening after the adoption of this amendment has so interpreted this language, and, in accordance with such interpretation, has passed an act providing for the nomination of candidates for all elective state, district, county and municipal offices, in accordance with the provisions of this section of the constitution (103 O. L., 476). This act was approved by the governor of the state. It is true that this law does not take effect until January 1, 1914; but it does show the construction placed upon this amendment to the constitution by the legislative and executive departments of state. At the time this amendment was adopted, there was similar legislation covering the same subject-matter (Sections 4948 to 5015, General Code, inclusive), and by the provision of the constitution itself, these laws, not being in conflict with the constitutional amendments, remain in full force and effect.
In this connection there is another significant fact that must not be overlooked, and that .is that in framing this amendment the existence of these laws are recognized by the phrase “as provided by law,” while in the next sentence the language is that “provision shall be made by law for a preferential vote for United States senator.” In one case the language used is directly applicable *402 to existing statutory law, and, of course, to any future amendment thereof. In the second case, it has reference only to laws that are to be passed in the future by the general assembly of the state.
It would appear, therefore, that the phrase “as provided by law” means as provided by an act of the general assembly of Ohio, and not as provided by the charter or ordinances of a municipality.
The provisions of Section 7 of Article V apply only to primary elections, and the record in this case presents no question touching the manner or the method of the election- of officers after they are placed in nomination by the one or the other of the methods prescribed by that amendment, and,therefore, that question requires no consideration or discussion at this time.
For the reasons above given I dissent from the judgment of affirmance entered by this court in this case.
Shauck and Newman, jj., concur in the dissenting opinion.
*403 Hon. HUGH L. NICHOLS, Chief Justice.*
Hon. JOHN A. SHAUCK,
Hon. JAMES G. JOHNSON,
Hon. MAURICE H. DONAHUE,
Hon. R. M. WANAMAKER, ,
Judges.
Hon. OSCAR W. NEWMAN,
Hon. J. FOSTER WILKIN,